USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/18/14

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>Plaintiff,<br><br>v.<br><br>Royal Bank of Canada,<br><br>Defendant. | Case No. 12 Civ. 2497 (AKH/KNF)<br><br>~~[PROPOSED]~~ CONSENT ORDER FOR PERMANENT INJUNCTION AND CIVIL MONETARY PENALTY AGAINST DEFENDANT ROYAL BANK OF CANADA<br><br>ECF Case |

## I. INTRODUCTION

On April 2, 2012, Plaintiff Commodity Futures Trading Commission ("Commission") filed a Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act against Defendant Royal Bank of Canada ("RBC" or "Defendant") (Dkt. No. 1), and on October 17, 2012 filed an Amended Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act ("Amended Complaint") against RBC. (Dkt. No. 50.) Both the initial and Amended Complaints sought injunctive relief and the imposition of civil monetary penalties for RBC's violations of the Commodity Exchange Act ("Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), 7 U.S.C. §§ 1 *et seq.*, and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. § 1.1 *et seq.* (2012).

## II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Amended Complaint against Defendant without a trial on the merits or any further judicial proceedings, Defendant:

1. Consents to the entry of this Consent Order for Permanent Injunction and Civil Monetary Penalty Against Defendant ("Consent Order");

2. Affirms that Defendant has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the Summons and Amended Complaint in this matter;

4. Admits the jurisdiction of this Court over it and the subject matter of this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1;

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1 *et seq.*;

6. Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e);

7. Waives:

a) any and all claims that it may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2013), relating to, or arising from, this action;

b) any and all claims that it may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110

Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

c) any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

d) any and all rights of appeal from this action;

8. Consents to the continued jurisdiction of this Court over it for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if it now or in the future resides outside the jurisdiction of this Court;

9. Agrees that it will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waive any objection based thereon;

10. Agrees that neither it nor any of its agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Amended Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Amended Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect Defendant's: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. Defendant shall undertake all steps necessary to ensure that all of its agents and/or employees under its authority or control understand and comply with this agreement;

11. By consenting to the entry of this Consent Order, Defendant neither admits nor denies the allegations of the Amended Complaint, as supplanted by the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which Defendant admits. Defendant consents to the entry of this Consent Order and to the use of these findings in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party; provided, however, that the Defendant does not consent to the use of the findings or conclusions in this Consent Order as the sole basis for any other proceeding brought by the Commission, other than in a proceeding in bankruptcy or to enforce the terms of this Consent Order. Nor does Defendant consent to the use of this Consent Order, or the findings or conclusions in this Consent Order by any other party in any other proceeding;

12. Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 37 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against it, whether inside or outside the United States; and

13. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendant in any other proceeding.

## III. <u>FINDINGS AND CONCLUSIONS</u>

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, and permanent injunction, and the imposition of civil monetary penalties, pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A. Findings of Fact**

**1. The Parties to This Consent Order**

14. Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq.* (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2013).

15. Defendant RBC was during the relevant period, and is currently, a Canadian bank and financial services firm headquartered in Toronto, Canada with offices in the United States and other countries around the world. Among other business, RBC engaged in proprietary trading of on- and off-exchange derivative products through its offices and branches located in New York, Toronto, Bahamas and Cayman Islands as well as subsidiaries located in Luxembourg and the United Kingdom, among other locations.

**2. Defendant's Stock Futures Trading**

16. Between June 1, 2007 and May 31, 2010 (the "Relevant Period"), RBC and two of its subsidiaries traded two types of futures contracts that were based on shares of stock issued by U.S. and Canadian companies. The two types of futures contracts were narrow based stock index futures ("NBI"), which are futures contracts based on baskets of underlying stock, and single stock futures ("SSF"), which are futures contracts based on a single underlying stock. RBC's and its subsidiaries' NBI and SSF transactions were conducted as "block trades," which are privately negotiated transactions under exchange rules comprised of multiple futures contracts, which are reported and centrally cleared on an electronic futures exchange in Chicago, Illinois called OneChicago, LLC ("OneChicago").

17. During the Relevant Period, RBC executed 1,026 NBI and SSF transactions through its branches and internal trading accounts, trading opposite two of RBC's subsidiaries. The two branches were RBC Bahamas Branch and RBC Cayman Branch, which were branches of RBC located in the Bahamas and Cayman Islands. The set of internal RBC accounts was known as Canadian Transit and its traders were located in Toronto. The two RBC subsidiaries involved in the trades were RBC Capital Markets Arbitrage, S.A. ("CMA"), a Luxembourg-based subsidiary with offices in New York, and RBC Europe Limited ("RBC EL"), a United Kingdom-based bank subsidiary with offices in London. The RBC branches, RBC Bahamas and RBC Caymans, the RBC subsidiaries, CMA and RBC EL, and Canadian Transit are collectively referred to herein as the "RBC Corporate Group".

18. The NBI and SSF trades were executed through block trades. The transactions were entered into by RBC and its subsidiaries at initiation with an express or implied understanding that they later would be offset or delivered opposite each other, and were equal and offsetting in all material respects: they involved the same quantity of contracts, the same contract price and the same contract expiration month, and they were executed at the same time. As a result, the trades were designed to and did achieve wash results for the RBC corporate group.

19. During the Relevant Period, the rules of the OneChicago exchange required parties engaging in block trades to report the trades to the exchange "without delay." Although RBC counterparties entered into the trades with an express or implied understanding that they later would be offset or delivered opposite each other, RBC reported only the initial trades to OneChicago. RBC did not report the express or implied understanding to enter the later trades, which were executed to offset or deliver the initial trades, to OneChicago "without delay." It

therefore failed to comply with OneChicago's block trade rules and therefore, the trades were non-competitively executed.

20. RBC's SSF and NBI trades were part of a larger trading strategy designed, in part, to profit from stock loan businesses, to fund RBC EL, to optimize capital for CMA, and to achieve certain tax benefits. Senior RBC personnel designed the NBI and SSF trades so that RBC entities would be both buyer and seller in the block transactions. In this way, RBC was able to coordinate, and did coordinate, the material elements of each transaction, including trade time, trade quantity, price and the composition of the blocks of contracts traded.

21. The profits and losses from trading NBI and SSF contracts that accrued to the RBC entities that participated in the trades were ultimately consolidated in RBC's overall profits and losses, and therefore the futures trades themselves resulted in no profits or losses to the RBC Corporate Group. Because the profits and losses on the futures contracts offset, the futures trades entailed no risk of changes in the price of the futures contracts, and were economic and futures market nullities that created a wash result for the RBC Corporate Group.

22. Through the NBI and SSF transactions, the RBC Corporate Group intended to negate risk of changes in the price of the futures contracts, and the transactions did in fact negate such risk.

**B. Conclusions of Law**

**1. Jurisdiction and Venue**

23. This Court has jurisdiction over this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such

person to enjoin such act or practice, or to enforce compliance with the Act or any rule, regulation, or order thereunder.

24. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e), because Defendant transacted business in this District, and the acts and practices in violation of the Act occurred within this District.

**2. Defendant Engaged in Wash Sales and Fictitious Sales in Violation of Section 4c(a) of the Act, and Noncompetitive Trades in Violation of Commission Regulation 1.38(a).**

25. RBC violated Section 4c(a) of the Act, 7 U.S.C. § 6c(a), and Commission Regulation 1.38(a), 17 C.F.R. § 1.38(a), by knowingly entering into purchases and sales of NBI and SSF contracts opposite its subsidiaries with the express or implied understanding that the positions later would be offset or delivered opposite each other and which were offset or delivered by sales and purchases of NBI and SSF contracts by RBC's subsidiaries. Specifically, during the Relevant Period RBC employees knowingly structured and executed 1,026 NBI and SSF trades that were equal and offsetting in all respects: in each such block transaction (1) the futures contracts which RBC sold and which its subsidiaries bought were the same, (2) the purchase and sale prices for the futures contracts were the same, (3) the delivery month of the futures contracts was the same, (4) the purchases and sales were executed at the same time, (5) the size of the offsetting purchases and sales were the same, and (6) the RBC Corporate Group was not exposed to risk in the futures market. The trades therefore achieved wash results for the RBC corporate group.

26. The RBC employees who oversaw the NBI and SSF trading knew that the offsetting transactions would negate, and did negate, the market risk inherent in futures market transactions. Senior RBC personnel designed the NBI and SSF trades so that RBC entities would be both buyer and seller in the transactions, and RBC was therefore able to coordinate,

and did coordinate, the material elements of each trade, including trade time, trade quantity and the composition of the block of contracts traded.

27. Further, RBC's employees knew that profits and losses from the futures trades that accrued to the RBC counterparties to the trades were ultimately consolidated in RBC's overall profits and losses, and therefore resulted in no consolidated profits or losses to the RBC Corporate Group. Profits made by one RBC counterparty on the NBI and SSF trades offset the losses incurred by the other RBC counterparty on the trades. And because profits and losses on the futures trades fully offset on a consolidated basis, these RBC employees knew that they entailed no risk in the futures market, and were economic and futures market nullities, for the RBC Corporate Group.

28. RBC's NBI and SSF trades were fictitious sales in violation of Section 4c(a) of the Act because the profits and losses that accrued to the RBC counterparties from the trades netted to zero when they were consolidated in the RBC Corporate Group's overall profits and losses.

29. Contrary to the written rules of the OneChicago exchange, RBC did not report the express or implied understanding to enter the later, offsetting segments of its NBI and SSF trades to OneChicago "without delay." Because the trades were not executed in accordance with OneChicago's written rules, they were not conducted in accordance with the Commission's regulations governing the execution of noncompetitive transactions, and in that way were noncompetitive transactions.

30. The foregoing acts, omissions, and failures of RBC's employees occurred within the scope of their employment, office, or agency with RBC. Therefore, RBC is liable for its employees' acts, omissions, and failures constituting violations of Section 4c(a) of the Act,

7 U.S.C. § 6c(a), and Commission Regulation 1.38(a), 17 C.F.R. § 1.38(a), pursuant to Section 2(a)(1)(B) of the Act, as amended, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2011).

**3. Likelihood of Future Violations**

31. Unless restrained and enjoined by this Court, there is a reasonable likelihood that RBC will continue to engage in the acts and practices alleged in the Amended Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

32. Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, RBC is permanently restrained, enjoined, and prohibited from directly or indirectly entering into or confirming the execution of a transaction that is, is of the character of, or is commonly known to the trade as a wash sale, or is a fictitious sale, in violation of Section 4c(a) of the Act, 7 U.S.C. § 6c(a). Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, RBC is also permanently restrained, enjoined, and prohibited from directly or indirectly executing any noncompetitive transaction in violation of Commission Regulation 1.38(a), 17 C.F.R. § 1.38(a).

## V. CIVIL MONETARY PENALTY

33. Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendant shall pay a civil monetary penalty in the amount of thirty five million dollars ($35,000,000) ("CMP Obligation"), plus post-judgment interest, within ten (10) days of the date of entry of this Consent Order. If the CMP Obligation is not paid within ten (10) days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of

this Consent Order at the rate of .20%, which is the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

34. Defendant shall pay its CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

Commodity Futures Trading Commission
Division of Enforcement
ATTN: Accounts Receivables – AMZ 340
E-mail Box: 9-AMC-AMZ-AR-CFTC
DOT/FAA/MMAC
6500 S. MacArthur Blvd.
Oklahoma City, OK 73169
Telephone: (405) 954-7262

If payment by electronic funds transfer is chosen, Defendant shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendant shall accompany payment of the CMP Obligation with a cover letter that identifies Defendant and the name and docket number of this proceeding. Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

35. Partial Satisfaction: Any acceptance by the Commission of partial payment of Defendant's CMP Obligation shall not be deemed a waiver of its obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## VI. MISCELLANEOUS PROVISIONS

36. Cooperation: Defendant shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement and any other U.S. governmental agency, in this action, and in any investigation, civil litigation, or administrative matter related to the subject matter of this action or any current or future Commission investigation related thereto.

37. Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to the Commission:

Regional Counsel
Division of Enforcement – Central Region
U.S. Commodity Futures Trading Commission
525 West Monroe, Suite 1100
Chicago, Illinois 60661

Notice to Defendant:

Ted Helwig, Esq.
Katten Muchin Rosenman LLP
525 W. Monroe St.
Chicago, Illinois 60661
(312) 902-5537 (direct dial)
(312) 902-1061 (facsimile)
*ted.helwig@kattenlaw.com*

All such notices to the Commission shall reference the name and docket number of this action.

38. Change of Address/Phone: Until such time as Defendant satisfies in full its CMP Obligation as set forth in this Consent Order, Defendant shall provide written notice to the Commission by certified mail of any change to its telephone number or mailing address within ten (10) calendar days of the change.

39. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to

amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing, (b) signed by all parties hereto, and (c) approved by order of this Court.

40. Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

41. Waiver: The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

42. Acknowledgements: Upon being served with copies of this Consent Order after entry by the Court, Defendant shall sign an acknowledgement of such service and serve such acknowledgement on the Commission within ten (10) calendar days.

43. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendant to modify or for relief from the terms of this Consent Order.

44. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendant, upon any person under its authority or control, and upon any person who receives actual notice of this Consent Order, by

personal service, email, facsimile, or otherwise insofar as he or she is acting in active concert or participation with Defendant.

45. Authority: RBC warrants that this Consent Order has been duly authorized by it and that RBC's attorney, Ted Helwig, Esq. of Katten Muchin Rosenman LLP, has been duly empowered to sign and submit this Consent Order on its behalf.

46. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, email, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

47. Defendant understands that the terms of the Consent Order are enforceable through contempt proceedings, and that in any such proceedings Defendant may not challenge the validity of this Consent Order.

48. Pursuant to Rule 506(d)(1)(ii)(A), 17 C.F.R. § 230.506(d)(1)(ii)(A), of the Securities & Exchange Commission's Regulation D, this Consent Order constitutes an order enjoining RBC from engaging in certain conduct or practices, as specifically set forth within this Consent Order, in connection with the purchase or sale of a security. Under the specific and unique facts and circumstances presented here, pursuant to Rule 506(d)(2)(iii), disqualification under Rule 506(d)(1) of the Regulation D exemption should not arise as a consequence of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order for Permanent Injunction and Civil Monetary Penalty Against Defendant Royal Bank of Canada.

IT IS SO ORDERED on this 18 day of December, 2014

UNITED STATES DISTRICT JUDGE

CONSENTED TO AND APPROVED BY:

Ted Helwig, Esq.

Katten Muchin Rosenman LLP
525 W. Monroe St.
Chicago, Illinois 60661
(312) 902-5537 (direct dial)
(312) 902-1061 (facsimile)
*ted.helwig@kattenlaw.com*

Attorney for Defendant

Dated October 6, 2014

David Slovick, Esq.

U.S. Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5451 (direct dial)
(202) 418-5987 (facsimile)
*dslovick@cftc.gov*

Attorney for Plaintiff

Dated October 6, 2014